PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH SAUTTER, | ) | |
| | ) | CASE NO.  4:12CV2399 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| CORRECTIONS OFFICER HALT, *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF No. 4] |

*Pro se* Plaintiff Joseph Sautter filed this fee-paid[1] *Bivens*[2] action against Elkton Federal Correctional Institution ("FCI Elkton") Corrections Officers Halt, Jagel, Brasso, Rexroad, and Norman, FCI Elkton Lieutenant Beton and FCI Elkton Counselor Mraules.  In the Complaint (ECF No. 1), Plaintiff alleges Defendants harassed and retaliated against him.  He seeks monetary damages.

---

[1]  Plaintiff filed a  motion to proceed *in forma pauperis* (ECF No. 4).  In response to an Order (ECF No. 5), he subsequently paid the full filing fee.  Therefore, Plaintiff's motion to proceed *in forma pauperis* (ECF No. 4) is denied as moot.

[2]  Under the *Bivens* doctrine, a plaintiff may allege a claim based on an injury of his constitutional rights by a federal employee.  *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971).

(4:12CV2399)

## I.  Background

Plaintiff was incarcerated in the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix").[3]  Prior to his transfer to FCI Fort Dix on February 14, 2012, Plaintiff was incarcerated at FCI Elkton for a period of seven months.  He asserts that during his time at FCI Elkton, he was harassed and retaliated against by corrections officers due to his conviction for a sexual offense and for filing grievances.

Plaintiff alleges the harassment began on July 3, 2011 when he was working in the food service area.  Officer Halt was the supervisor of this job detail.  Plaintiff claims he asked Halt if he could leave the food service area during "the Education move" but Halt denied the request.  An hour later, he asked Halt if he could leave to attend religious services.  This request was also denied.  Two hours after this request, Plaintiff contends Halt met with the food service workers.  During this meeting, Halt allegedly made remarks to the group effectively suggesting that inmates whom ask questions were effeminate, and therefore vulnerable to assaults of a sexual nature.  Plaintiff believed Halt was threatening him and reported the comment to others who

---

[3]  According to the Bureau of Prisons website (http://www.bop.gov/inmateloc/), Plaintiff is no longer a federal inmate.  He was released on January 3, 2014.

Plaintiff has failed to provide the court with his current address.  It is the party, not the court, who bears the burden of apprising the court of any changes to his mailing address.  *See Yeschick v. Mineta*, 675 F.3d 622, 630 (6th Cir. 2012) (citing *Casimir v. Sunrise Fin., Inc.*, 299 Fed.Appx. 591, 593 (7th Cir. 2008) (affirming district court's denial of Rule 60(b) motion where movants claimed due to house fire they did not receive mail informing them of court's entry of summary judgment); *Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005) ("[A] litigant who invokes the processes of the federal courts is responsible for maintaining communication with the court during the pendency of his lawsuit."); *Watsy v. Richards*, No. 86-1856, 1987 WL 37151, at *1 (6th Cir. April 20, 1987) (affirming dismissal for failure to prosecute where appellant failed to provide district court with "current address necessary to enable communication with him")).

2

(4:12CV2399)

reported it to the prison psychologist.  The psychologist arranged to have Plaintiff's job

assignment changed to landscaping.  Plaintiff contends Halt was not disciplined for making the

comment.  ECF No. 1 at PageID #: 9.

Thereafter, on August 8, 2011, another incident occurred.  Plaintiff was playing cards

with other inmates in a day room that connected his housing unit to another unit.  ECF No. 1 at

PageID #: 9.  Plaintiff acknowledges that he was not authorized to be in the day room, but he

claims prison staff were aware that inmates regularly visited with each other there and generally

had not enforced this rule.  ECF No. 1 at PageID #: 10.  Officer Jagel approached them and asked

if they were gambling.  ECF No. 1 at PageID #: 9.  Plaintiff claims Jagel threatened to strip

search the inmates and indicated they could all strip together because the inmates liked to look at

little boys.  ECF No. 1 at PageID #: 9-10.  He also claims Jagel said he would call Officer Brasso

to conduct the search because Brasso was homosexual.  ECF No. 1 at PageID #: 10.  He indicates

Jagel even called Brasso on the radio to ask for his assistance with the strip search.  ECF No. 1 at

PageID #: 10 and 27.  He does not, however, allege what transpired after the call was placed and

gives no indication of whether the search took place.

Plaintiff reported Officer Jagel's conduct to Counselor Mraules while Jagel was still

present.  He contends Jagel threatened to retaliate against him if he filed an incident report.

Mraules gave Plaintiff a BP-8.5 grievance form, but Plaintiff contends Mraules did not

adequately address Jagel's behavior.  Plaintiff reported the incident with Jagel to his Unit

Manager Fekete.  He contends Fekete sent him to protective custody.  Four days later, on August

12, 2011, Jagel wrote a conduct report against Plaintiff claiming he was "out-of-bounds."

3

(4:12CV2399)

Plaintiff appealed the conduct report and filed a claim of harassment against Jagel.  He contends his harassment claims were ignored and he was found guilty of the conduct offense.  He was released from segregation on September 1, 2011.  ECF No. 1 at PageID #: 10.

Plaintiff claims that two days later, Officer Rexroad summoned Plaintiff to his office in the evening and indicated he had received complaints from other inmates regarding Plaintiff's hygiene.  ECF No. 1 at PageID #: 10-11 and 42.  Plaintiff said he would shower in the morning because he was having a visitor.  Rexroad asked him why he would not take a shower then as he had been out at recreation all day.  Plaintiff indicated to Rexroad he was saving his clean clothing for the next day, reiterating that he was expecting a visitor.  ECF No. 1 at PageID #: 42.  He claims he did not want to shower at that time because he was concerned his shower would extend past 10:30 p.m. when the lights would go out and the showers would be considered out of bounds.  ECF No. 1 at PageID #: 11 and 42.  He also interpreted the request to shower as a proposition for a sexual favor.  ECF No. 1 at PageID #: 10.  He refused to shower and told Rexroad to "grow up."  Rexroad also claimed Plaintiff called him an idiot.  Thereafter, Rexroad wrote a conduct report against Plaintiff for insolence  ECF No. 1 at PageID #: 11 and 42.

On September 3, 2011, Plaintiff was summoned to the compound office.  He indicates this is a "high foot traffic area."  Plaintiff alleges he arrived to find Officer Norman and Lieutenant Beton openly discussing Plaintiff's charges.  Shortly afterward, Plaintiff was escorted to segregation where he passed by Counselor Mraules.  Plaintiff states he asked Mraules for assistance but his pleas were ignored.  Plaintiff alleges Officer Jagel was instructed to secure Plaintiff's property because he was going to segregation.  He claims Jagel instead gave his

4

(4:12CV2399)

property away to other inmates and announced to them that Plaintiff was a sexual offender.  He also claims Beton told Jagel to confiscate Plaintiff's radio.  ECF No. 1 at PageID #: 11.

Plaintiff alleges he was not provided a fair disciplinary review proceeding regarding the incident report for insolence.  Plaintiff claims he was not permitted to call witnesses when the Disciplinary Hearing Officer reviewed his report and referred the matter to the Disciplinary Committee.  He was sanctioned to loss of telephone, "TRULINCS," and visiting privileges for 90 days.  ECF No. 1 at PageID #: 12 and 41.  His request for protective custody placement was granted.  ECF No. 1 at PageID #: 12.

Plaintiff indicates he fell in his cell and was injured while in protective custody on December 3, 2011.  He states that after the fall, he experienced "continuous bleeding for several days, nausea, headaches, seizures, black outs, [and was] unable to see well enough to read."  Plaintiff claims he requested medical care every day but was not seen by a doctor until December 9, 2011.  Officer Rexroad escorted him to this appointment.  Plaintiff alleges that when they were in the sallyport, Rexroad threatened him.  He does not elaborate on the nature of the threat, but indicates Rexroad told him that as a pedophile, he would be unable to adequately protect himself in prison.  ECF No. 1 at PageID #: 12.

Thereafter, Plaintiff remained in segregation until he was transferred to FCI Fort Dix in February 2012.  ECF No. 1 at PageID #: 12.  He claims that while he was housed in this unit, he was repeatedly taken to an exercise cage that was littered with bird defecation, even though a clean exercise area was available.  ECF No. 1 at PageID #: 13.

5

(4:12CV2399)

Plaintiff alleges that Defendants violated his First, Fifth, and Eighth Amendment rights. First, he asserts Defendants retaliated against him for filing grievances in violation of the First Amendment.  Plaintiff contends he complained that Officers Halt and Jagel sexually harassed him, and Officer Rexroad made sexual advances toward him.  He states Jagel threatened to retaliate against him and wrote a conduct report against him for being out of bounds.  He contends that Rexroad wrote a conduct report against Plaintiff for insolence.

Plaintiff asserts a second claim under the First Amendment for denial of access to courts. He contends Defendants would not give him his legal papers while he was in segregation.

Plaintiff next asserts five claims under the Eighth Amendment.  First, he asserts Defendants sexually harassed him.  Second, he contends Officer Jagel confiscated his radio at Lieutenant Beton's instruction.  Third, Plaintiff claims Defendants  placed him in an exercise area littered with bird feces.  Fourth, Plaintiff alleges Defendants placed him in danger by openly discussing the nature of his charges.  Finally, although not specifically stated, it is possible Plaintiff intended to assert a claim for deliberate indifference to serious medical needs based on the delay in providing him with treatment when he fell while in protective custody.

Plaintiff alleges he was denied due process under the Fifth Amendment.  He asserts he did not receive a fair disciplinary hearing in violation of Bureau of Prisons ("BOP") Policy.  He also claims Officer Jagel gave away his property to other inmates and confiscated his radio on the instruction of Lieutenant Beton.

(4:12CV2399)

Plaintiff believes Defendants should be prosecuted for hate crimes.  He claims they are clearly biased against people who commit sexual offenses.  Plaintiff contends harassment can support a hate crime.

## II.  Standard for Dismissal

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), a district court is expressly authorized to dismiss any civil action filed by a prisoner seeking relief from a governmental entity, if the court concludes that the complaint fails to state a claim upon which relief may be granted, or if the plaintiff seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A; *Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000); *see also Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974) (citing numerous Supreme Court cases for the proposition that attenuated or unsubstantial claims divest the district court of jurisdiction); *In re Bendectin Litig.*, 857 F.2d 290, 300 (6th Cir.1988) (recognizing that federal question jurisdiction is divested by unsubstantial claims).

When determining whether the plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555.  Although a complaint need not contain detailed factual allegations, its "[f]actual

7

(4:12CV2399)

allegations must be enough to raise a right to relief above the speculative level on the assumption

that all the allegations in the complaint are true." *Id.* (citations omitted).  The Court is "not

bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*,

478 U.S. 265, 286 (1986).  The Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), further

explains the "plausibility" requirement, stating that "[a] claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id*. at 678.  Furthermore, "[t]he plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility

that a defendant acted unlawfully." *Id.*  This determination is a "context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Id* at 679.

### III.  Law and Analysis

#### A.  First Amendment  - Retaliation

Plaintiff first asserts Defendants retaliated against him for filing grievances.  To state a

prima facie case for retaliation prohibited by the First Amendment, Plaintiff must establish:  1)

he engaged in protected conduct; 2) an adverse action was taken against him that would deter a

person of ordinary firmness from continuing to engage in that conduct; and 3) that a causal

connection exists between the first two elements.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th

Cir. 1999).

#### 1.  Protected Conduct

The first element that Plaintiff  must establish for his retaliation claim is that he was

engaged in conduct protected by the First Amendment.  *Id.* at 395-96.  Plaintiff contends he

8

(4:12CV2399)

complained of sexual harassment by Officers Halt and Jagel.  Filing a grievance against prison officials is conduct protected by the First Amendment.  *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).  Plaintiff has met this first criteria with respect to Halt and Jagel.

It is not clear, however, that he engaged in protected conduct with respect to the incident with Officer Rexroad.  He contends he declined to take a shower because he believed Rexroad's instruction for him to do so was really a proposition for a sexual favor.  The Court finds no authority for the proposition that Plaintiff has a First Amendment right to refuse to shower.  Plaintiff does have a constitutional right to refuse unwanted sexual advances.  *See Jackson v. Madery*, 158 Fed.Appx. 656, 662 (6th Cir. 2005).  There are no facts in the Complaint (ECF No. 1), however, which suggest Rexroad's purpose was sexual as opposed to simply responding to the complaints of other inmates concerning Plaintiff's general hygiene.  While there are no factual allegations to support Plaintiff's conclusion that his refusal to shower was a refusal to engage in sexual conduct, this assertion, if true, could be construed as protected conduct.

### 2.  Adverse Action

The second element that Plaintiff must establish for his retaliation claim is that Defendants took an adverse action against him.  *Thaddeus-X*, 175 F.3d at 396.  An adverse action is one that is "capable of deterring a person of ordinary firmness" from exercising the constitutional right in question.  *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (quoting *Thaddeus-X*, 175 F.3d at 398).  Plaintiff does not have to show actual deterrence.  *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005).  Even the threat of an adverse action can satisfy this

9

(4:12CV2399)

element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct. *Hill*, 630 F.3d at 472; *Thaddeus-X*, 175 F.3d at 398. While this element is not an overly difficult one for Plaintiff to meet, "certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations." *Hill*, 630 F.3d at 472-73 (quoting *Thaddeus-X*, 175 F.3d at 398).

Plaintiff cites to two adverse actions taken against him. He claims Officer Jagel wrote a conduct report against him for being out of bounds. He also claims Officer Rexroad issued a conduct report to him for insolence. He does not indicate any specific adverse action was taken against him for reporting the actions of Officer Halt. He simply states that he was advised by other inmates that Officer Halt had the ability to make life miserable for inmates who crossed him. Receiving a conduct report which could result in placement in segregation could deter a person of ordinary firmness from exercising the constitutional right to file grievances. *See Thaddeus-X*, 175 F.3d at 396. The Court finds Plaintiff satisfies the second criteria against Jagel and Rexroad. He does not satisfy the second criteria with respect to Halt because Plaintiff does not allege a specific adverse action taken against him for complaining about Halt's behavior.

### 3. Motivation for Adverse Action

The third element that Plaintiff must establish for his retaliation claim to survive dismissal is that the adverse action was motivated, at least in part, by his participation in protected conduct. *Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005). This element addresses whether the defendants' subjective motivation for taking the adverse action was at least in part to retaliate against the prisoner for engaging in protected conduct. *Thaddeus-X*, 175 F.3d

10

(4:12CV2399)

at 399.  If the prisoner can show that the defendants' adverse actions were at least partially

motivated by the prisoner's protected conduct, then the burden shifts to the defendants to show

that they would have taken the same action even absent such protected conduct.  *Id.*

Plaintiff does not allege Officer Halt took an adverse action against him.  He therefore

cannot show that the action was motivated by a grievance against Halt.

Plaintiff has not alleged facts to reasonably suggest Officer Rexroad pursued a conduct

report against Plaintiff for refusing sexual advances.  Plaintiff claims that the conduct report was

issued to him for insolence after Plaintiff told the officer to grow up.  Rexroad also claimed

Plaintiff called him an idiot.  Plaintiff does not deny telling the officer to grow up.  The Court

finds there are no facts alleged in the Complaint (ECF No. 1) which suggest Rexroad was asking

for sexual activity when he asked Plaintiff to take a shower, nor are there any facts which suggest

a conduct report was issued for refusing to engage in sexual activity rather than for making

unwarranted comments to the officer.  While Plaintiff is not required at the pleading stage to

include detailed factual allegations in his complaint, he must offer more than speculation or legal

conclusions.  *See Iqbal*, 556 U.S. at 678.  Plaintiff's claim that Rexroad was initiating sexual

advances requires the court to speculate about basic facts which are not alleged.  He has not set

forth a viable claim for retaliation against Rexroad which meets the basic pleading requirements

of Fed. R. Civ. P. 8.

Plaintiff also does not state a plausible claim for retaliation against Officer Jagel.  He

contends he reported Jagel's comments about conducting a strip search to Jagel's superiors.

Plaintiff claims Jagel then issued a conduct report to him for being "out-of-bounds."  Although

11

(4:12CV2399)

he indicates being in the day room that connected his housing unit to another unit is common practice in the prison and the rule is not enforced, he admits he was out of bounds. These allegations are insufficient to suggest that the conduct report was motivated by Plaintiff's complaint about Jagel's conduct in threatening a strip search. Plaintiff's First Amendment claims for retaliation against Halt, Rexroad, and Jagel are dismissed.

### B. First Amendment - Access to the Courts

Plaintiff also includes a First Amendment claim for denial of access to the courts. He contends he was not given access to his legal documents while he was in segregation. To state a claim for denial of access to the courts, Plaintiff must allege that particular actions of Defendants prevented him from pursuing or caused the rejection of a specific non-frivolous direct appeal, habeas corpus petition, or civil rights action. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). The right of access to the courts is directly related to an underlying claim, without which a Plaintiff cannot have suffered injury by being shut out of court. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Plaintiff must therefore "plead and prove prejudice stemming from the asserted violation." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). In order words, he must demonstrate "actual injury" by showing that his underlying claim was non-frivolous, and that it was frustrated or impeded by Defendants. *Lewis*, 518 U.S. at 353. "It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint. . . ." *Christopher*, 536 U.S. at 415.

Plaintiff has not alleged that any of the individuals named as defendants denied him access to his legal materials and does not allege he suffered an actual injury. This claim is stated

12

(4:12CV2399)

in one sentence in the Complaint.  He alleges, "Plaintiff's problems continued, he was not given

access to his legal documents."  ECF No. 1 at PageID #: 12.  He does not indicate any of the

defendants refused to give him access to his legal materials or that in doing so, they prevented

him from filing or caused the rejection of a non-frivolous appeal, habeas corpus petition, or civil

rights action.  Absent an injury, Plaintiff has not stated a First Amendment claim for denial of

access to the courts.  This claim is dismissed.

### C.  Eighth Amendment

The Complaint (ECF No. 1) includes five claims under the Eighth Amendment.  First,

Plaintiff claims that Officers Halt, Jagel, Brasso, and Rexroad sexually harassed him.  He claims

that Lieutenant Beton and Counselor Mraules did not adequately intervene to discipline the

officers in question.  Second, he contends Beton ordered Jagel to confiscate his radio.  Third,

Plaintiff alleges he was regularly sent to exercise in a cage littered with bird defecation.  Fourth,

he claims Officer Norman and Lieutenant Beton openly discussed the nature of his charges,

which could place him in danger.  Finally, Plaintiff claims he did not receive prompt medical

attention after he fell in protective custody.

The Eighth Amendment imposes a constitutional limitation on the power of the states to

punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene

society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).  The

Supreme Court in *Wilson v. Seiter*, 501 U.S. 294 (1991), set forth a framework for courts to use

when deciding whether certain conditions of confinement constitute cruel and unusual

punishment prohibited by the Eighth Amendment.  A plaintiff must first plead facts which, if

13

(4:12CV2399)

true, establish that a sufficiently serious deprivation has occurred.  *Id.* at 298.  Seriousness is

measured in response to "contemporary standards of decency."  *Hudson v. McMillian*, 503 U.S.

1, 8 (1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  Routine discomforts of prison

life do not suffice.  *Id.*  Only deliberate indifference to serious medical needs or extreme

deprivations regarding the conditions of confinement will implicate the protections of the Eighth

Amendment.  *Id.* at 9.  Plaintiff must also establish a subjective element showing the prison

officials acted with a sufficiently culpable state of mind.  *Id.*  Deliberate indifference is

characterized by obduracy or wantonness, not inadvertence or good faith error.  *Whitley v. Albers*,

475 U.S. 312, 319 (1986).  Liability cannot be predicated solely on negligence.  *Id.*  A prison

official violates the Eighth Amendment only when both the objective and subjective

requirements are met.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

　　　　The objective component of an Eighth Amendment claim is contextual and responsive to

"contemporary standards of decency."  *Estelle*, 429 U.S. at 103.  Extreme deprivations are

required to make out a conditions-of-confinement claim.  Because routine discomfort is "part of

the penalty that criminal offenders pay for their offenses against society," *Rhodes*, 452 U.S. at

347, "only those deprivations denying 'the minimal civilized measure of life's necessities' are

sufficiently grave to form the basis of an Eighth Amendment violation."  *Wilson*, 501 U.S. at 298

(quoting *Rhodes*, 452 U.S. at 347) (citation omitted).

　　　　The subjective component requires a showing that prison officials knew of, and acted

with deliberate indifference to, an inmate's  health or safety.  *Id.* at 302-03; *Flanory v. Bonn*, 604

F.3d 249, 253-55 (6th Cir. 2010).  Deliberate indifference "entails something more than mere

14

(4:12CV2399)

negligence." *Farmer*, 511 U.S. at 835.  An inmate must show that prison officials had "a

sufficiently culpable state of mind" in denying medical care.  *Brown v. Bargery*, 207 F.3d 863,

867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).  In *Brown*, the Sixth Circuit Court of

Appeals noted that "[i]n prison-conditions cases that state of mind is one of deliberate

indifference to inmate health or safety." *Id.*  This standard is met if "the official knows of and

disregards an excessive risk to inmate health or safety; the official must both be aware of facts

from which the inference could be drawn that a substantial risk of serious harm exists, and he

must also draw the inference." *Id.* (quoting *Farmer*, 511 U.S. at 837).

   "Sexual abuse may violate contemporary standards of decency and can cause severe

physical and psychological harm." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997).  For

this reason, severe or repetitive sexual abuse of an inmate by a prison officer can be "objectively,

sufficiently serious" to constitute an Eighth Amendment violation. *Id.*; *see Rhodes*, 452 U.S. at

347 (noting that the list of conditions held cruel and unusual by the Supreme Court is not

exclusive).  Sexual abuse of a prisoner by a corrections officer has no legitimate penological

purpose, and is "simply not part of the penalty that criminal offenders pay for their offenses

against society." *Boddie*, 105 F.3d at 861 (quoting, *Farmer*, 511 U.S. at 834).

   On the other hand, sexual harassment, absent contact or touching, does not satisfy the

objective requirement.  Such conduct does not constitute an unnecessary and wanton infliction of

pain.  *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard

asked prisoner to have sex with her and to masturbate in front of her and other female staffers did

not rise to level of Eighth Amendment violation), *overruled on other grounds by Porter v.*

15

(4:12CV2399)

*Nussle*, 534 U.S. 516 (2002); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n. 11 (10th Cir. 1998)

(allegations that county jailer subjected female prisoners to severe verbal sexual harassment and

intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v.*

*Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. March 10, 2000) (sexual comments

and gestures by prison guards did not constitute unnecessary and wanton infliction of pain);

*Zander v. McGinnis,* No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse

of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim);

*Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997)

(offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and

presumed sexual preference did not state an Eighth Amendment claim).  Other courts have held

that even minor, isolated incidents of sexual touching coupled with occasional offensive sexual

remarks do not rise to the level of an Eighth Amendment violation.  *See, e.g.*, *Jackson v. Madery,*

158 Fed.Appx. 656, 662 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and

grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so

failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354,

at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the

prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the

objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th

Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his

buttocks could not be construed as sexual assault); *Boddie*, 105 F.3d at 859-61 (court dismissed

as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his

16

(4:12CV2399)

hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

Plaintiff indicates that the officers made sexually suggestive comments to him.  He contends Officer Halt told a group of inmates that those inmates whom asked questions were effeminate and therefore vulnerable to assaults of a sexual nature.  He claims Officer Jagel threatened to strip search a group of inmates engaged in a card game and indicated to them that they liked to look at male genitalia, so they could strip together.  Plaintiff indicates that Jagel told the group that Officer Brasso was a homosexual and then called Brasso for assistance.  He does not indicate whether the search took place.  Finally, Plaintiff alleges Officer Rexroad told him to shower, which he contends was a sexual proposition.  These comments, at best, constitute sexual harassment, not sexual abuse.  Plaintiff does not allege any of these officers actually touched him in a sexually suggestive manner.  Offensive comments and verbal harassment do not satisfy the objective component of the Eighth Amendment.  *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987).

Plaintiff also includes a claim against Lieutenant Beton and Counselor Mraules for failing to take proper disciplinary steps against the corrections officers who made the offensive comments.  Plaintiff, however, cannot base his claim against these Defendants only on their failure to supervise other employees.  *Respondeat superior* is not a proper basis for liability under § 1983.  *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied,* 469 U.S. 845 (1984).  The liability of supervisors cannot be based solely on the right to control employees, nor "simple awareness of employees'

17

(4:12CV2399)

misconduct." *Leary*, 349 F.3d at 903; *Bellamy*, 729 F.2d at 421.  An employer's "failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir.1982)).  "At a minimum a plaintiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (quoting *Hays,* 668 F.2d at 874).  Plaintiff does not provide factual allegations in the Complaint (ECF No. 1) that suggest Beton or Mraules approved of or authorized the harassment.

Furthermore,  a prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate.  *McQueen v. Beecher Community Schools*, 433 F.3d 460, 470 (6th Cir. 2006).  Here, the comments of Officers Halt, Jagel, Brasso, and Rexroad did not violate Plaintiff's Eighth Amendment rights.  Therefore, Lieutenant Beton and Counselor Mraules cannot be held liable for an Eighth Amendment violation under *respondeat superior* for the actions of these employees.

Next, Plaintiff claims Lieutenant Beton violated his Eighth Amendment rights by ordering Officer Jagel to confiscate his radio.  Plaintiff does not elaborate on this statement.  In fact, he does not indicate why the Lieutenant ordered the radio to be confiscated, so it is difficult to determine that the officers' actions violated the Eighth Amendment.  Even so, the Eighth Amendment is concerned only with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348.  While a radio

18

(4:12CV2399)

may make life in prison more pleasant, it certainly is not one of "the minimal civilized measure of life's necessities." *Id.* at 347. This also fails to rise to the objective level of a constitutional violation.

In his third Eighth Amendment claim, Plaintiff alleges that when he was in the segregation unit in protective custody, he was often taken to an outdoor exercise cage that was littered with bird excrement. He indicates that there were cleaner cages into which he could have been placed. This again fails to state a claim for relief under the Eighth Amendment. "[A]n odorous cell without amenities does not constitute the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment. *Chandler v. Chapleau*, No. 95-6615, 1996 WL 577603, at *1 (6th Cir. Oct. 7, 1996) (citing *Knop v. Johnson*, 977 F.2d 996, 1012, 1019 (6th Cir. 1992) (citations omitted), *cert. denied*, 507 U.S. 973 (1993)). Again, while this arrangement may have been uncomfortable for Plaintiff, it was for a brief time and there is no suggestion that the condition was so severe that it constituted a serious risk to Plaintiff's health or safety.

Fourth, Plaintiff alleges Officer Norman and Lieutenant Beton, and Officer Jagel discussed the nature of his charges in areas where they could be overheard by others. Plaintiff contends that possible exposure could have placed him in danger of criminal attacks. Plaintiff was already on his way to protective custody where he remained for the remainder of his incarceration at FCI Elkton. He was placed in protective custody at his request. There is no indication that Plaintiff was actually threatened by another inmate. The allegation that the possibly overheard comments could have placed him in danger is not sufficient to state a claim for relief.

19

(4:12CV2399)

In his last claim under the Eighth Amendment, Plaintiff alleges he did not receive prompt medical attention after he fell in protective custody. He claims he signed up for sick call but did not see a doctor for six days. While this claim could arguably meet the objective standard, it fails to meet the criteria for the subjective standard.

To show Defendants are sufficiently culpable, Plaintiff must allege facts suggesting the particular Defendant was personally aware of facts from which the inference could be drawn that a substantial risk of serious harm existed to Plaintiff, and also drew the inference. *Farmer*, 511 U.S. at 837. Plaintiff does not allege that Officers Halt, Brasso, Rexroad, and Norman or Lieutenant Beton or Counselor Mraules knew he had fallen in his cell while he was in protective custody or that they disregarded his need for treatment. Absent allegations suggesting they had personal knowledge of the situation at the time it occurred, these Defendants cannot be held liable for deliberate indifference to serious medical needs. Plaintiff's Eighth Amendment claims are dismissed.

**D. Due Process**

Finally, Plaintiff contends he was denied due process. He has two due process claims. First, he assert he was denied due process in the context of a prison disciplinary hearing. Second, he claims he was denied due process when Officer Jagel gave his property away to other inmates rather than packing it up for him when he went to segregation.

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law. . . ." U.S. CONST. AMEND. V. In addition to setting the procedural minimum for deprivations of life, liberty, or property, the Due Process Clause bars

20

(4:12CV2399)

"certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986).  It does not prohibit every deprivation by the government of a person's life, liberty or property.  *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994).  Only those deprivations which are conducted without due process are subject to suit under 42 U.S.C. § 1983.  *Id.*

The Due Process Clause has a procedural component and a substantive one.  The two components are distinct from each other because each has different objectives, and each imposes different constitutional limitations on government power.  A procedural due process limitation, unlike its substantive counterpart, does not require that the government refrain from making a choice to infringe upon a person's life, liberty, or property interest.  It simply requires that the government provide "due process" before making such a decision.  *Howard v. Grinage*, 82 F.3d 1343, 1349-53 (6th Cir. 1996).  The goal is to minimize the risk of erroneous deprivation, to assure fairness in the decision-making process, and to assure that the individual affected has a participatory role in the process.  *Id.*  Procedural due process requires that an individual be given the opportunity to be heard "in a meaningful manner."  *See Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 563 (6th Cir. 1983).  Many procedural due process claims are grounded on violations of state-created rights, or rights that do not enjoy constitutional standing.  *See id.*  The rationale for granting procedural protection to an interest that does not rise to the level of a fundamental right is to prevent the arbitrary use of government power.  *Howard*, 82 F.3d at 1349.  Procedural due process claims do not consider the egregiousness of the deprivation itself, but only question whether the process accorded prior to the deprivation was constitutionally

(4:12CV2399)

sufficient.  *Id.* at 1350.  Although the existence of a protected liberty or property interest is the threshold determination, the focus of this inquiry centers on the process provided, rather than on the nature of the right.

Substantive due process, on the other hand, serves the goal of preventing "governmental power from being used for purposes of oppression," regardless of the fairness of the procedures used.  *See Daniels*, 474 U.S. at 331.  Substantive due process serves as a vehicle to limit various aspects of potentially oppressive government action.  *Id.*  It serves as a check on legislation that infringes on fundamental rights otherwise not explicitly protected by the Bill of Rights; or as a check on official misconduct which infringes on a "fundamental right;" or as a limitation on official misconduct, which although not infringing on a fundamental right, is so literally "shocking to the conscience," as to rise to the level of a constitutional violation.  *Howard*, 82 F.3d at 1349.

### 1.  Procedural Due Process

Plaintiff claims he was sanctioned with placement in segregation and loss of property without due process.  Prisoners have more narrow liberty and property interests than other citizens as "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (citation and internal quotation marks omitted).  The question of what process is due is answered only if the inmate establishes a deprivation of a constitutionally protected liberty or property interest.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

22

(4:12CV2399)

The Due Process Clause, standing alone, confers no liberty or property interest in freedom from government action taken within the sentence imposed. *Sandin*, 515 U.S. at 480. "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485. "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221. Interests protected by the Due Process Clause are generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Id.*

Generally, unless the disciplinary action is accompanied by a withdrawal of good time credits or is for a significant period of time that presents an unusual hardship on the inmate, no liberty or property interest will be found in the case. *Sandin*, 515 U.S. at 484. Where good time credits are at stake, due process requires only that a prisoner receive: 1) written notice of the hearing at least twenty-four hours in advance; 2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and 3) a written statement by the factfinder of the evidence relied on and the reason for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974). Furthermore, some evidence must exist to support the disciplinary conviction. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455-56 (1985).

23

(4:12CV2399)

Plaintiff does not suggest he was deprived of good time credits as a result of this disciplinary hearing.  He lost some privileges and was placed in segregation for a short period of time.  There is no suggestion that a protected liberty interest was infringed by Defendants' conduct.  Plaintiff's procedural due process rights were not violated at the disciplinary hearing.

Plaintiff also alleges he was denied due process when Officer Jagel gave his property to other inmates and confiscated his radio on the instruction of Lieutenant Beton.  The Court will now consider whether this portion of the cause of action states a cognizable procedural due process claim.[4]  To prevail on a procedural due process claim for deprivations of property, Plaintiff must plead and prove either that he was deprived of property as a result of an established government procedure that itself violates Plaintiff's due process rights; or that Defendants deprived him of his property pursuant to a random and unauthorized act and available government remedies would not be adequate to redress the deprivation.  *Macene v. MJW, Inc.,* 951 F.2d 700, 706 (6th Cir 1991); *see also Vicory v. Walton,* 721 F.2d 1062, 1064 (6th Cir. 1983).  Plaintiff is not challenging an established government procedure, statute or policy.  Instead, he is asserting he was deprived of his personal property due to unauthorized acts of Jagel and Beton.

_____

[4]  Although the cases cited in this opinion construe the Fourteenth Amendment's restrictions on states, those cases are also authoritative when adjudicating a Fifth Amendment claim against the federal government.  *See United States v. Stewart,* 306 F.3d 295, 308 n. 2 (6th Cir. 2002) (noting that the Due Process Clauses of the Fifth and Fourteenth Amendments are "analogous"); *Medical Mut. of Ohio v. deSoto,* 245 F.3d 561, 575 (6th Cir. 2001) ("[T]he language and policies behind the Due Process Clause of the Fourteenth Amendment are essentially the same as those behind the Due Process Clause of the Fifth Amendment.").

(4:12CV2399)

An unauthorized intentional deprivation of property by a government employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fifth Amendment if a meaningful post-deprivation remedy for the loss is available.  For intentional, as for negligent deprivations of property by government employees, the government's action is not complete until and unless it provides or refuses to provide a suitable post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Borkins v. U.S. Postal Service Employees*, 97 Fed.Appx. 32, 34 (6th Cir. 2004).  Because Plaintiff is alleging that Officer Jagel and Lieutenant Beton confiscated his personal property without providing him with procedural due process, he is required under *Hudson* to show that the government provided no meaningful post-deprivation remedy for these alleged improprieties.

In two unreported opinions, the Sixth Circuit Court of Appeals upheld the dismissal of Fifth Amendment property deprivation claims based on the availability of a post-deprivation remedy under the Federal Tort Claims Act ("FTCA").  *See Stiger v. O'Neill*, 53 Fed.Appx. 738, 740 (6th Cir. 2002) (referring to *McNeair* to hold plaintiff's claim for the deprivation and destruction of his property were properly dismissed, as post-deprivation remedies are available to the plaintiff and he did not show that such remedies are inadequate); *McNeair v. Snyder*, 7 Fed.Appx. 317, 319 (6th Cir. 2001) ("As a federal prisoner asserting that federal employees destroyed his property, McNeair's post-deprivation remedy lies with the FTCA").

On January 22, 2008, the Supreme Court of the United States issued its decision in *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 227-228 (2008) holding that a federal prisoner has no cause of action under the FTCA for the loss of personal property at the hands of BOP officers.

25

(4:12CV2399)

*Id.* at 227-28.  The Court determined that these claims fall within the exclusions from the

FTCA's waiver of sovereign immunity for torts committed by federal employees listed in 28

U.S.C. § 2680(c) for "[a]ny claims arising in respect of the assessment of collection of any tax or

customs duty, or the detention of any property by any officer of customs or excise or any other

law enforcement officer[ .]" Reversing *Kurinsky v. United States*, 33 F.3d 594 (6th Cir. 1994)

and several other circuit court decisions, the Supreme Court determined that BOP officers were

"law enforcement officers" under the foregoing exception.  In light of *Ali*, Plaintiff no longer has

a cause of action under the FTCA for the loss of his personal property at the hands of Officer

Jagel and Lieutenant Beton.

　　　　A prisoner complaining of lost or destroyed property can pursue a claim for his damaged

property through the BOP's administrative remedies.  *See* 31 U.S.C. § 3723; *Ali*, 552 U.S. at 228

n. 7 (2008) (stating that 31 U.S.C. § 3723(a)(1) provides an administrative remedy for prisoner's

claim of lost property, and noting that the BOP, at that time, "ha[d] settled more than 1,100 such

claims in the last three years."); *see also Bowens v. U.S. Dep't of Justice*, 415 Fed.Appx. 340,

344 (3rd Cir.) (per curiam) (federal prisoner seeking damages for lost property has

post-deprivation remedy through BOP's Administrative Remedy Program), *cert. denied*, 132

S.Ct. 170 (2011); *Williams v. Mestas*, 355 Fed.Appx. 222, 224 (10th Cir. 2009) (same).  In

addition, 31 U.S.C. § 3724(a) authorizes the United States Attorney General to settle a clam for,

*inter alia*, "damage to, or loss of, privately owned property, caused by an investigative or law

enforcement officer as defined in section 2680(h) of title 28, who is employed by the Department

26

(4:12CV2399)

of Justice acting within the scope of employment."[5]  Both administrative procedures have been

found adequate to preclude a *Bivens* claim for a due process violation.  *See Marulanda v. U.S.*

*Marshals Service*, 467 Fed.Appx. 590, 590-91 (9th Cir. 2012); *Hoskins v. Craig*, No. 11-296-

GPM, 2013 WL 675734, at *2-3 (S.D. Ill. Feb. 25, 2013); *Jordan v. Federal Bureau of Prisons*,

No. 09 Civ. 8561(ALC), 2013 WL 1143617, at *7 (S.D.N.Y. March 19, 2013); *Frith v. Hill*, No.

07 Civ. 5899(JSR), 2009 WL 3073716, at *2 and *17-18 (S.D.N.Y. Sept. 23, 2009); *see also*

*United States v. Norwood*, 602 F.3d 830, 836 (7th Cir. 2010) (noting that if remedy pursuant to §

3724 is adequate it would preclude *Bivens* claim).  *But cf. Storm v. Bureau of Prisons*, No.

4:08CV1690, 2009 WL 1163123, at *5 (N.D. Ohio April 29, 2009) (Economus, J.) ("plausible

recourse can be had through an action against defendants for a constitutional deprivation of

property for which no post-deprivation remedy exists under the FTCA").  Because Plaintiff had

post-deprivation remedies available to him, he cannot prevail on his Fifth Amendment

procedural due process claim against Officer Jagel and Lieutenant Beton for intentional

destruction of personal property.  *Aron v. Green*, 4:14-CV-109-A, 2014 WL 1917543, at *4

(N.D. Texas May 12, 2014); *Jones v. Federal Bureau of Prisons*, No. 11-CV-4733

(KAM)(MDG), 2013 WL 5300721, at *12 (E.D.N.Y. Sept. 19, 2013); *see also Edkins v. United*

*States*, No. 13-CV-14421, 2015 WL 871587, at *17 (E.D. Mich. Feb. 27, 2015) (31 U.S.C. §

3723 or 31 U.S.C. § 3724 procedures constitute an adequate post-deprivation remedy barring

plaintiff's due process claim relating to his property).

---

[5] BOP officers are "law enforcement officers" as defined in 28 U.S.C. § 2680(h).
*Chapa v. U.S. Dep't of Justice*, 339 F.3d 388, 390 (5th Cir. 2003) (per curiam).

(4:12CV2399)

### 2. Substantive Due Process

Plaintiff's substantive due process claim is also subject to dismissal.  Due process claims of this nature involve official acts which cause a deprivation of a substantive fundamental right. *Mertik v. Blalock*, 983 F.2d 1353,1367 (6th Cir. 1993).  In addition, under substantive due process, courts have invalidated laws or actions of government officials that "shock the conscience."  *See United States v. Salerno*, 481 U.S. 739, 746 (1987). These actions are unconstitutional regardless of the procedural protections provided.  *Parate v. Isibor*, 868 F.2d 821, 832 (6th Cir. 1989).  A citizen, however, does not suffer a constitutional deprivation every time he is subjected to some form of harassment by a government agent.  *Id.* at 833.  The conduct asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights."  *Id.* (citation and internal quotation marks omitted).

The action of giving away Plaintiff's property, alone, does not reflect the type of severe and extreme conduct which violates the substantive component of the Due Process Clause. Plaintiff claims this action is more egregious because he believes it was done to further harass him for being a sexual offender.  This claim is very similar to his claim under the Eighth Amendment.  When a specific Amendment provides an explicit source of constitutional protection against a particular sort of governmental conduct, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989).  The Court already considered Plaintiff's harassment claim in its analysis of his Eighth Amendment claims.  His substantive due process

28

(4:12CV2399)

claim is dismissed as duplicative of his Eighth Amendment claim or, in the alternative, as not

otherwise actionable.

### IV.  Conclusion

Based on the foregoing, the Complaint (ECF No. 1) is dismissed pursuant to 28 U.S.C. §

1915A.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision

could not be taken in good faith.[6]


       IT IS SO ORDERED.


 April 27, 2015                              /s/ Benita Y. Pearson
Date                                        Benita Y. Pearson
                                            United States District Judge

---

[6] 28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken in forma pauperis if the trial court certifies in
writing that it is not taken in good faith.

29